We are ready to begin with today's docket. The first case is cause number 20-20101, United States of America v. Adamola Babatunde Okulaja. Close? You'll let me know how close. May it please the Court. My name is Scott Martin. I represent Mr. Okulaja. Mr. Okulaja was convicted by a jury of two counts of false use of a passport and sentenced to concurrent 33-month terms of imprisonment. This appeal challenges both his conviction and his sentence. The first issue concerns the District Court's exclusion of Defense Exhibit 2C as irrelevant. That was a picture of a fake driver's license with another man's photo on it. If you recall, this was an identity case. It was all about who was the person who presented these false passports to open the bank accounts. We argued that in trying to admit this exhibit that the man could pass for Mr. Okulaja, and since this picture was found on the phone of another man named Prince Ogunjimi, I'll call him Prince, who was under investigation for similar crimes, that this possibly could have been the guy who was presenting the counterfeit passports at the bank, this person whose picture is in the fake driver's license. Our position is that this photo was relevant because its existence on Prince's phone made it less probable that Mr. Okulaja was the perpetrator rather than someone else working with Prince. As this Court has recognized, there's a very low bar for relevance. It's said so in Novick. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without it, and the fact is of consequence in determining the action. And so, as we learn in evidence class in law school, brick is not a wall, and this is such a low bar for relevance that this is part of our defense. I would like to call your attention to a few points that Prince, as I said, was being investigated for opening bank accounts, very similar conduct. He was being investigated at this time. That's when this picture was found, and the bank records, particularly with regard to this bank account opened in 1993, with David Samuel Allen, showed that two men went to open the bank, open the account on that date, and the government conceded that it did not know if Prince was one of them. There also were no webcam photos taken on the day that account was opened, and Miss Momin, who was the bank manager who testified for the government trial, was not present when those accounts were opened and did not recognize Mr. Okulaja at trial. The agent, however, who testified did recognize the man in the fake driver's license and said, I know that's somebody else. So it's possible this guy could have been a suspect at some point in some crime. Now, the error, we argue, was harmful. Well, this Court has said an evidentiary error is harmful if there is a reasonable possibility that the exclusion of the evidence contributed to the conviction. And here, there was not just photographic evidence. There was also your client's e-mail address. Yes, Your Honor. The e-mail address was on the accounts. That's correct. But our position is that... The jury at least could have hypothetically convicted based on the e-mail address. We're not saying the evidence was insufficient to support a conviction. We're saying there's a reasonable possibility that the exclusion contributed to the conviction. The photos are not, it's not like they're just not close enough. Well, our position is that's a question... You agree it's an abuse of discretion standard. It's abuse of discretion standard. Our position is that it was for the jury to decide. That's a fact question. And this was part of our defense. It was that it's an identity case. And this Court has even said in L. Mazzane, in cases going back to Cornett in 1999, that this Court will not reverse a conviction if beyond a That's a pretty high standard for the government to meet. And so bottom line, our position, bottom line is that the government has to do more than show that the jury just probably would have convicted him, or more likely than not would have convicted him had the evidence been admitted. That's a much higher standard than that. The government hasn't even addressed that standard in its brief. And again, it seriously undermined our defense on identity. The jurors were deprived of the opportunity to compare the photograph and the fake ID to the pictures and the counterfeit passports to determine for themselves whether this guy could have passed for him, basically using this fake ID with this picture on it to open the accounts. You know, much like if a college student trying to get into a bar with a picture of somebody else's ID on it and the bouncer looks at him and, you know, thinks that's him, good enough. You know, that's the same concept. So that was our defense. But wasn't there some photographic evidence of your client opening an account? The government has argued that the webcam photos at a couple other, at the Millet account and a Schnur account, which was an uncharged account, I'm using the names of the accounts were opened, or the Schnur account, which was not charged. But there was a webcam photo at the Millet account and the Schnur account. But no one, the government didn't call any witnesses to identify that person as our client. There was no witness who came and said, yes, that's him. And the jury didn't have an opportunity to compare the picture and the fake driver's license to those webcam photos. But they saw the webcam photos with an image in it that looked like your client? According to the government, yes. And there was no webcam photo for one of the charged accounts, the Allen account. And we know that two men came to open that account. And all we had was the government's witness, a bank manager came in and said that the bank tellers are trained to look at the license and look at the person who's opening the account. And our position was that this person could have passed for our client, this is part of our defense, and the jury should have been allowed to consider it. And the government cannot show, certainly cannot show beyond a reasonable doubt that it did not contribute to the conviction. I'm sure you've read Judge Ho's opinion in Deckard. How does that affect you? Okay. We're moving on now to the sensing issue, I'm assuming. I believe that Deckard actually supports our position that there are two different ways of proving relevant conduct. And in this case, neither one of those ways is met to prove that these uncharged uses of the passport qualify as relevant conduct. I think that the heart of this issue is whether the cross-reference to the fraud guideline permits the court to view the uncharged passport offense as relevant conduct because it was somehow all part of the common scheme or plan. That was the question that was essentially left open in Jackson, which is an unpublished case, and there was a footnote on that. He wasn't charged with bank fraud, he was charged with illegal use of passports. Yes, so, and this is where the order of operations matters greatly in 1B1.1 and 1B1.2. And I'll walk you through it quickly. 1B1.2a defines the offense of conviction as, I'm sorry, 1B1.a1 requires the court first to determine the guideline section applicable to the offense of conviction. And then you go to 1B1.2a defines offense of conviction as the offense conduct charged in the count of indictment of which the defendant was convicted. So here, it's the false uses of the passport, as you said. And so the guideline is 2L2.2. Use, as we've argued, every use is a different offense of the passport. And we've cited Tavares-Lavario for that, which was a similar case involving 18 U.S.C. Section 1546, which is use of an immigration document. In that case, it was a false green card. So after you've identified what the offense of conviction is, then the court must determine the applicable guideline range in accordance with relevant conduct. And that's under, you look at 1B1.2b and its application note. And it tells you to determine any applicable sentencing factors pursuant to the relevant conduct definition. And that's 1B1.2 note 2. So then, so you've got to go over to determine relevant conduct before you start getting to the applicable sentencing factors, like base offense level, enhancements, cross-references. So that's when you say, okay, well, what's relevant conduct to this offense of conviction? What is the relevant conduct? And if you're looking to see whether it's under 1B1.3a1a, that's acts and omissions that occurred during the commission of the offense of conviction in preparation for, in the course of attempting to avoid detection. Well, here, each use was a separate offense on a separate date. And our argument is that the uncharged use to open this, this uncharged use for the Schnurr bank account was not during or in furtherance or to cover up for these, the counts of conviction. So that's one reason why it's not relevant conduct. The second reason is under 1B1.3a2. And that's it. That applies solely with respect to offenses of a character for which 3D1.2d would require grouping of multiple counts. All acts and omissions that are part of the same course of conduct or common scheme or plan as the offense of conviction. So this gets a roundabout way back to your question. It's, you know, it doesn't group. It's because you have to carry out this analysis at this point by treating the uncharged conduct, here the opening of this Schnurr IBC account, which was not charged, as if it were a separate count. Kind of like they treated the pseudo counts in the Randall case that we've discussed in our brief, which was, involved the child pornography production guideline. And the reason why is you look at, not just in Randall, but you look at application note 5A of 1B1.3a2 and it says this applies to offenses which grouping of counts would be required under 3D1.2d had the defendant been convicted of multiple counts. So it's telling you that you have to treat this uncharged conduct as if it's its own, had been a count that, you know, a count of conviction. And we know that count of conviction would not group because the guideline applicable to it is 2L2.2. And under 3D1.2d, that's specifically listed as an offense that does not group. So, going back to the order of operations, you've determined now what the relevant conduct is, and we now have eliminated the uncharged use from the equation. It's out of the equation before you even start getting to determine what the base offense level is, specific offense characteristics, and then finally you get the cross-references. Under 1B1.a1a2, it says to do it in the following order. So you follow the order, but you've already determined relevant conduct at that point, and you have to use that relevant conduct to determine those other things before you even get to the cross-reference. So that's, I know it's a painstaking way to look at it, but you have to go through every step along the way that the sentencing commission has laid out for us here. And so that's our position as to why this uncharged conduct cannot be viewed as relevant conduct here and should not have been considered. And error was not harmless, because there would be a six-point swing in the offense level. We argue that it should be only a six-level increase, because once you have those two counts of conviction, now you go forward with them, and those two counts are a do-group, because they each apply the cross-reference to the bank fraud guideline. Does the government argue that the error was harmless? No, they don't. They've essentially waived it in their brief. But the guideline range would be 10 to 16 months, rather than the 27 to 33-month range. Doesn't your client get out in about six months? He gets out in July, July 24th, I believe. How many angels can dance on the head of a pimp? That's the question. He would actually not, it would not be moot anyway, because he does have a supervised release term. And so in the event that this court doesn't decide the case in less than seven months, which I believe it could, we could get him back and re-sentence before July. We could go back and ask for a reduction in his term of supervised release to account for over-served time. And this court has said in the past that appeals of sentences, prison sentences, do not become moot if the defendant has a supervised release term following their release date. He's going to be transferred to ICE upon release? He's going to have some immigration issues. I'm not sure about that. He had status here, so I don't think there's an order of deportation yet. But I'm not exactly sure about that. Thank you. All right. Thank you, counsel. Apolli? Good morning, and may it please the Court. Katherine Pick on behalf of the United States. I'm going to start with the third issue and then circle back to issue one and two if this Court has any questions. The third issue involves multiple sentencing guidelines, and I think what's important for this Court to know is that we have a cross-reference. And the cross-reference kind of changes how we apply the guidelines. Now, when we start out, we have a violation of a false use of a passport starts at 2L2.2. But 2L2.2C1A directs that if a defendant uses a passport in the contempted commission of a felony offense, then you apply a cross-reference. And the cross-reference kicks us to 2B1.1, which is bank fraud. So now we're operating under the bank fraud guideline. And that means that we can group these offenses together, the two convictions, and under 3D1.2. So the offense of conviction is false use of a passport? Yes, sir. And that's not a groupable offense? That's not a groupable offense under 3D1.2D. So how do you get to using a cross-reference that has to do with fraud? So 2L2.2 says that if a defendant uses a passport in the commission of a felony offense, you apply the cross-reference, which kicks you to 2B1.2. Now, 2B1.2 is the bank fraud because Okolaja used a fake passport to commit bank fraud. Except that the exclusion in 3D1.2, the exclusion is not to a part of 2L2.2, it's to the entirety of 2L2.2. Right. So now we're operating 3D. And you can see that we're in the 2L2.2 world. You just want to apply a part of that, right? So I'm not conceding we're in the 2L2.2 world. We're no longer in that. We started out with it and then we left it. 2L2.2 is not groupable. It's not groupable, yes, Your Honor. Because so it's not groupable under 3D1.2D. But we're applying the bank fraud offense. The bank fraud. Why do we even get to that when 2L2.2 is excluded categorically? Because it directs us to apply a cross-reference. That's what 2L2.C1A says. So if he's using a fake passport in the commission of a felony offense, which he did in bank fraud, it says you now apply the bank fraud guideline. So look, the most you can get with that argument is you've got 3D1.2, I guess, literally pointing us in both directions. Don't group and also group. I don't think it's pointing us in two directions. I think it's saying, all right, well, if you have this cross-reference and you're in this world that has a groupable offense, you now apply the bank fraud offense. So it's confusing in that you start with the 2L2.2, but then we leave it and we forget it. And now we're operating in the bank fraud world and we're in the bank fraud world. So the problem I have with that argument is it's not limited to 2L2.2A and B. In other words, it's not exempting C. It's applying it to the entire 2L2.2. That's why, to me, the closest you get is we're basically being pointed in both directions. Well, I think if that's true, then I think we go to 1B1.5C, where it says if an offense level is determined by a cross-reference to another guideline, then you apply the check for Chapter 3 adjustments. And so that includes the grouping rules. So it's, and I understand that it's confusing, but when you have this step-by-step, the plain reading of the guidelines say, okay, start with the false use of a passport guideline, then it says, all right, well, you have a cross-reference. And that cross-reference kicks you to the bank fraud. I'm sorry, what provision were you citing just now? I was citing to 1B1.5C. And 1B1.5A actually starts. It says a cross-reference refers to the entire offense guideline. And that includes the base offense level, the specific offense characteristics, the cross-references. So that's kind of where it says we leave false use of a passport. We're no longer using 2L2.2. We're in bank fraud land. And that's where we get the enhancement. So the cross-reference really kind of changes how we apply the guidelines. Because I understand that under 3D1.2D, you can't group the bank fraud convictions. So that means under 1.1382, which defines what relevant conduct is, it says solely with respect to an offense of a character for which 3D1.2D would require grouping of multiple counts, all acts and omissions described above that were part of the same course of conduct or common scheme or plan. So that's where we're saying the Ronald Jr. account and the other bank accounts that he used, that's all considered relevant conduct. You're saying 1B1.5C. Yes. If the offense level is determined by a reference to another guideline. Yes. And it says under subsection A or B1 above, the adjustments in Chapter 3 also are determined in respect to the reference offense guideline. Except as otherwise expressly provided. Except as otherwise expressly provided. Yes, Your Honor. So we're saying, so that's kind of our argument is, hey, this cross-reference now applies. And because bank fraud's groupable under 3D1.2D, the Ronald Jr. account and all the other bank accounts that weren't charged is considered relevant conduct. So under our argument, the district court properly found by a preponderance of the evidence that the Ronald Jr. account and the other bank accounts were considered relevant conduct. And the Randall case that defense counsel cites too in his brief doesn't apply. Because one, that doesn't have a cross-reference. And two, you're talking about a guideline that wasn't under the groupable list under 3D1.2D. So tell me why Deckert doesn't apply. So I don't think Deckert, I think Deckert explains 3D1.2 and how the trailing clause, but I don't think it really answers the question here. I think it just explains how the trailing clause under 3D1.2 doesn't apply to, if I have that, let me make sure I'm citing, excuse me, 1B1.31A and 1B doesn't incorporate the trailing clause under A2. Well, if 1B1.3A2 is not applicable, how can you win? So 1B1.3A2. It's inapplicable, right. I know, Your Honor, because 1B1.3A2 is what we're saying does apply, because it's solely with respect to an offense of a character for which 3D1.2D would require grouping. So we are saying that that does apply, but I don't think that So you're saying that the check deposited to the Schnurr account is relevant conduct under A1? We're saying it's relevant conduct under A2 because it has the same course of conduct or common scheme or plan as the offense of conviction. So these are groupable offenses and all of these acts and omissions that he was committing in his time period of using bank passports to open up bank accounts, that that is under, that's the same course of comment or conduct scheme. That's relevant conduct that tracks the language. And in Jackson, this Court also found that that similar conduct was considered relevant conduct. They agreed with our argument in Jackson. It was on plain error, but this Court did agree with it. I'll move on to, if this Court has no further questions on Issue 3, I'm happy to move on to the first two issues. In terms of the first issue of the driver's license, I want to point out that the issues before the Court have nothing to do with sufficiency of the evidence. We're just here to discuss whether the driver's license, the District Court, properly exercises discretion in excluding the fake driver's license of an unidentified individual because it was irrelevant. And the evidence, the photo of this unidentified individual is irrelevant because it was found on one of three phones of Prince's phones and there's no ties to this case from this unidentified individual. The District Court made a proper finding that this individual had no resemblance to Okolaja, so there was no error and the District Court did not abuse its discretion in that trial decision. And then as to the second one with the webcam photos, those were properly authenticated. Ms. Monum testified that they were taken in the normal course of business and that she was able to demonstrate the bank's background of the photos and they don't require her to take the photo or talk to the tellers who took the photos. So, again, the District Court didn't abuse its discretion in that decision either. If this Court has no further questions for me, I'm happy to see the remainder of my time and just simply request that this Court affirm the District Court's trial decisions and Okolaja's convictions in his sentence in entirety. All right. Thank you, Counsel. Roboto. So, Your Honors, on the sentencing issue, my friend cites 1B1.5C as support for her argument, but that guideline really just begs the question that we're trying to answer here. It says, if the offense level is determined by a reference to another guideline under Subsection A1 or B1, well, that begs the question of, like, well, is the offense level in this case determined by reference to the fraud guideline? I mean, that's what we're trying to answer here as well. So it doesn't really support her argument. As I explained in my opening, the reason the cross-reference to the fraud guideline doesn't apply with regard to the uncharged use of the passport is that under the order of operations, you've already determined what relevant conduct is. We've already taken it completely out of the equation because it's not the uncharged use of the passport is not relevant conduct of the offense of conviction, the offenses, which were the two offenses for which Mr. Okolaja was charged and convicted. There are only two counts. So my friend is getting ahead of herself by saying that the cross-reference should be what we use to determine relevant conduct. That's backwards. We have to follow the way it's laid out under the order of operations in 1B1.1 and 1B1.2, which basically takes it completely off the tapes, not in the mix anymore, the uncharged use, by the time we get to the application of the cross-reference. Because under 1B1.1A2, it says you determine the following order, base offense level, specific offense characteristics, then cross-references. Well, you need a relevant conduct for base offense level and specific offense characteristics. Then you get to the cross-reference, and then you go on to the adjustments, and then you repeat the steps and apply the grouping rules and so on. So, Your Honors, our position is that the order of operations decides the case, and that you should rule in our favor, not just on the sentencing issue, but on the conviction as well. Unless there are any further questions, I'll rest. Thank you. Thank you, counsel. All right, the court will take this matter under advisement, and we are going to.